UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARY BYRD, *et al.*,                                   MEMORANDUM DECISION
                                                                         AND ORDER
                      Plaintiffs,                           00 CV 2135 (GBD)

        -against-

GLENN S. GOORD, *et al.*,

                      Defendants.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

      Plaintiffs are the paying recipients of collect telephone calls placed by inmates housed at facilities operated by the New York State Department of Correctional Services ("DOCS"). Plaintiffs commenced this action, on their own behalf and on behalf of those similarly situated, claiming their constitutional rights were being violated as a result of the exorbitant telephone rate applicable to such calls.[1] That rate was set forth in the exclusive service contract between DOCS and its sole telephone service provider, MCI.[2] Pursuant to the terms of that contract, DOCS received a sixty percent commission on the gross annual revenue from inmate-initiated telephone calls. The payment of this commission artificially inflated the rates charged for such calls. Plaintiffs contend that "this artificially inflated rate is not in any way connected to the telephone

---

[1] While this litigation was proceeding in federal court, a similar action was being litigated in the New York State courts. In the state court action, the New York Court of Appeals recently reinstated petitioners' constitutional claims, which had been dismissed as time-barred, and remitted the matter to the trial court to determine, in the first instance, whether such claims state a cause of action. Walton v. New York State Dep't of Corr. Servs., 831 N.Y.S.2d 749 (N.Y. 2007).

[2] MCI WorldCom, Inc. and MCI Telecommunications Corporation were originally named as defendants in this action. The Court previously granted their Fed.R.Civ.P. 12(b)(6) motion dismissing all the claims against them. Byrd v. Goord, 2005 WL 2086321 (S.D.N.Y. Aug. 26, 2005).

service provided . . . within []DOCS' institutions." (Pls.' Mem. Supp. Class Certification 3).

Plaintiffs are suing the Commissioner of DOCS, and New York State's Attorney General and Comptroller, all in their official capacities.[3] In this action, "Plaintiffs seek a declaration that Defendants' actions have violated and continue to violate Plaintiffs' rights and an injunction preventing Defendants from maintaining the sixty percent surcharge imposed by the single provider/collect call-only system at []DOCS' facilities." (Id. 3-4).[4] Plaintiffs have moved, pursuant to Fed.R.Civ.P. 23(a) and (b)(2), for class certification. Defendants oppose that motion, and cross-moved to dismiss the action as moot because the DOCS's commission policy has been discontinued. The defendants' motion to dismiss is granted and plaintiffs' motion is denied as moot.

DOCS's exclusive service contract with MCI remained in effect until March 31, 2001. The parties entered into a new contract, for the period of April 1, 2001 through March 31, 2006, which was renewable for two one-year periods. On January 8, 2007, a week after taking office, Governor Eliot Spitzer (formerly a named defendant in his official capacity as Attorney General) directed that the commission received by DOCS, on inmate collect telephone calls, be eliminated as of April 1, 2007. (Annucci Decl. Ex. A). On March 19, 2007, the telephone service contract

---

[3] Since the commencement of this action, each of the State officials, originally named as defendants in this action, have been succeeded in office. Their successors are automatically substituted as defendants in their stead. See, Fed.R.Civ.P. 25(d)(1). Accordingly, although not reflected in the caption of this case, the defendants are Commissioner of Correctional Services Brian Fischer, Attorney General Andrew M. Cuomo and Comptroller Thomas P. DiNapoli.

[4] With the exception of plaintiffs' claims challenging the commissions paid to DOCS, all claims against the New York State officials were previously dismissed for failure to state a claim. Byrd, 2005 WL 2086321, at *10. The remaining claims seek only injunctive and declaratory relief, not damages.

was extended for a second, and final, time from April 1, 2007 to March 31, 2008. The extension contract, which was entered into by Verizon as MCI's successor in interest, was restructured to comply with the Governor's directive. (Koberger 2nd Decl. Ex. C). The "modified" contract provides that "Verizon Business will not have any obligation to pay any commission payments and [ ] DOCS will not collect any commission payments previously required under . . . the Contract." (Annucci Decl. Ex. C at 1).

When the contract expires on March 31, 2008, new legislation will become effective that will bar DOCS from reinstating its prior commission practice. New York Correction Law § 623 was signed into law by Governor Spitzer on July 18, 2007. When § 623 comes into effect on April 1, 2008, DOCS will be prohibited from "accept[ing] or receiv[ing] revenue in excess of its reasonable operating cost" for providing telephone system services for inmates. See, N.Y. Correction Law § 623(3); see also, L.2007, c.240 § 2 [sic, should be § 3] ("This act shall take effect April 1, 2008 and shall apply to any new or renewal contract for inmate telephone services entered into on or after such date and provided further that any new or renewal contract for inmate telephone services entered into prior to April 1, 2008 shall not run past March 31, 2008.").[5]

---

[5] New York Correction Law § 623 reads:
1. Telephone services contracts for inmate in state correctional facilities shall be subject to procurement provisions as set forth in article eleven of the state finance law provided, however, that when determining the best value of such telephone service, the lowest possible cost to the telephone user shall be emphasized.
2. The department shall make available either a "prepaid" or "collect call" system, or a combination thereof, for telephone service. Under the "prepaid" system, funds may be deposited into an account in order to pay for station-to-station calls, provided that nothing in this subdivision shall require the department to provide or administer a prepaid system. Under a "collect call" system, call recipients are billed for the cost of an accepted telephone call initiated by an inmate. Under such "collect call" system, the provider of inmate telephone service, as an

In arguing that class certification is warranted, plaintiffs note:

> There is also no question that the injunctive relief Plaintiffs seek in this action is the predominant remedy.  Clearly, the goal of the remedies outlined in Plaintiffs' Amended Class Action Complaint is to establish the illegality of []DOCS' actions and to stop []DOCS from continuing to assess and collect an unconstitutional commission which serves no penological purpose now, or any time in the future.

(Pls.' Mem. Supp. Class Certification 20).

"Plaintiffs [now] acknowledge that the [new] legislation may impact the availability of *some* of the *injunctive* relief sought by Plaintiffs," but they nevertheless contend that "it does not adversely impact [their] entitlement to declaratory relief, and as such does not render Plaintiffs' case moot."  (Pls.'Counsel's Letter, of August 10, 2007, to Court at 1).  Plaintiffs contend that "a declaratory judgment regarding the constitutionality of Defendants' past actions will have the practical effect of guiding the [DOCS's] implementation of Correction Law § 623 to ensure protection of Plaintiffs' constitutional rights, and may also serve to define necessary relief should Defendants' unlawful behavior recur."  (Id. at 2).  Plaintiffs further argue that injunctive relief is still appropriate because "Defendants have failed to establish that there is no reasonable expectation that a future administration would re-institute a commission based calling system."  (Id. at 3).

---

additional means of payment, must permit the recipient of inmate calls to establish an account with such provider in order to deposit funds to pay for such collect calls in advance.
3.  The department shall not accept or receive revenue in excess of its reasonable operating cost for establishing and administering such telephone system services as provided in subdivision one and two of this section.
4.  The department shall establish rules and regulations or departmental procedures to ensure that any inmate phone call system established by this section provides reasonable security measures to preserve the safety and security of each correctional facility, all staff and all persons outside a facility who may receive inmate phone calls.

## MOOTNESS

"A 'case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" White River Amusement Pub, Inc. v Town of Hartford, 481 F.3d 163, 168 (2d Cir. 2007) (*quoting* City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)).  Where the named plaintiffs' claims become moot prior to class certification, the action will remain viable provided there still exist a live controversy in the case between defendant and at least one proposed class member having a personal stake in the litigation.  See, County of Riverside v. McLaughlin, 500 U.S. 44, 51 (1991); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-98 (1980).

An action does not become moot simply because defendants voluntarily cease the allegedly unlawful practice, as there is no assurance that defendants will not re-institute that practice sometime in the future.  See, Preiser v. NewKirk, 422 U.S. 395, 402 (1975) (citations omitted); Seidemann v. Bowen, - - F.3d - - , 2007 WL 2416533, at *7 (2d Cir. Aug. 28, 2007) (*quoting* N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 327 (2d Cir. 2003)).  Defendants' voluntary cessation of their allegedly unlawful acts will only moot an action where defendants establish: (1) there is no reasonable expectation that their challenged conduct will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the acts of which the plaintiffs complain.  See, Seidemann, 2007 WL 2416533, at *7 (*quoting* Granite State Outdoor Adver., Inc. v. Town of Orange, Conn., 303 F.3d 450, 451 (2d Cir. 2002)); see also, Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, - - U.S. - -, 127 S.Ct. 2738, 2751(June 28, 2007); Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (*quoting* Irish Lesbian and Gay Org. v. Guiliani, 143 F.3d 638, 647 (2d Cir. 1998)).  "[A] party claiming that its

voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Seidemann, 2007 WL 2416533, at * 7 (internal quotation marks and citations omitted); see also, Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000).

      Defendants' have met their heavy burden of demonstrating that DOCS's commission practice has ceased, and that there is no reasonable probability that such a practice will recur. In accordance with the Governor's directive, DOCS's present contract with its telephone service provider prohibits DOCS from receiving any commissions. The possibility that DOCS would be free to reinstate its commission practice, upon expiration of the contract or after a new governor assumes office, was intentionally foreclosed by the New York State legislature's enactment of Correction Law § 623. Under these circumstances there is no basis from which it can reasonably be inferred that DOCS might reinstate its commission practice. See eg., Lamar Adver. of Penn, LLC v Town of Orchard Park, 356 F.3d 365, 377 (2d Cir. 2004) (Finding that amendment of allegedly unconstitutional ordinance rendered action moot where record provided no basis to believe municipality intended to ever change ordinance back to its objectionable form.); Granite State, 303 F.3d at 451-52 (Finding that where challenged regulation is revised, and plaintiff does not challenge the constitutionality of the revised regulation, "there is no reason to think . . . the town has any intention of returning to the prior regulatory regime" or "that any unconstitutional restrictions are currently in place."); Tawwab v. Metz, 554 F.2d 22, 24 (2d Cir. 1977) (Finding that it was absolutely clear that challenged prison policy would not recur where policy change was embodied in an official prison document.); Armstrong v. Ward, 529 F.2d 1132, 1136 (2d Cir. 1976) (Finding no reasonable expectation that improper transfer of prisoners, to a facility

that has since closed, will be repeated notwithstanding the possibility that the facility may someday reopen.).  Since the challenged commission practice has ceased to exists and is further prohibited by law, the prospective injunctive relief sought, to permanently enjoin DOCS from operating its commission based calling system, will neither provide the named plaintiffs nor the proposed class members with any legally cognizable benefit.

"In certain circumstances it may be possible for a claim of declaratory relief to survive, notwithstanding the mootness of a companion claim for an injunction." Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996).  However, "[a] litigant may not use the declaratory judgment statute to secure judicial relief of moot questions." Christopher P. v. Marcus, 915 F.2d 794, 802 (2d Cir. 1990).  In "determining whether a request for declaratory relief ha[s] become moot, . . . 'the question in each case is whether the facts alleged, under all the circumstances,, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"* Preiser, 422 U.S. at 401 (*quoting* Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

A judicial declaration, in this federal lawsuit, as to the constitutionality of an abandoned and outlawed commission policy, will serve no useful purpose in clarifying and settling the legal relations at issue, nor can it legitimately affect the rights or legal interests of the parties. Notwithstanding plaintiffs' contentions to the contrary, declaratory relief cannot be utilized as an advisory opinion to provide DOCS with judicial guidance as to how it should implement § 623. See, Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the

case before it.") (citation and internal quotation marks omitted).[6] Since DOCS is presently precluded from receiving commissions, pursuant to the terms of its present contract with Verizon, and it is precluded thereafter from doing so by virtue of the enactment of § 623, no effectual relief, be it injunctive or declaratory, can be obtained by any of the plaintiffs in this case.

Accordingly, defendants' motion to dismiss the amended complaint is granted. Plaintiffs' motion for class certification is denied as moot.

Dated: New York, New York
September 26, 2007

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[6] Plaintiffs also note that "[w]hile the amended legislation prevents []DOCS from collecting a commission now, it fails to acknowledge that its past practice was wrong, illegal or unconstitutional." (Pls. Counsel's Letter, of August 10, 2007, to Court at 3). Plaintiffs argue that "[w]ithout this acknowledgment, and in the face of the State's continued fight (in another forum) to defend, the constitutionality thereof, the Plaintiff class is not properly protected from future harm." (Id.). Plaintiffs cannot obtain declaratory relief simply so that it may be used for *res judicata* or collateral estoppel purposes in the State court action, especially given the fact that declaratory relief is similarly sought in that action. See, Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003) (Noting that, in considering whether declaratory relief is appropriate, a court may consider "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata . . . [and] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court[.]") (internal quotation marks and citations omitted).

8